Btjbke, J. (dissenting).
I cannot agree with the majority’s conclusion that the advertisements in question in these companion cases do not violate the pertinent provision of the Alcoholic Beverage Control Law (§ 105, subd. 19). That section provides that: “ No licensee authorized to sell beer or liquor at retail for consumption off the premises shall display any sign on or adjacent to the licensed premises, setting forth the price at which beer or liquor, or any brand thereof, is sold or offered for sale, or advertise such price in any other manner or by any other means, except in the interior of the licensed premises.” (Emphasis added.) .Today’s decision permits price advertising by means of such phrases as “20% Off”, “at wholesale ”, “ Save 20% ”, and other similar phrases and prohibits only the use of the exact dollars-and-cents price at which the beer or liquor is being offered for sale. This conclusion is derived from the fact that the Legislature used the definite article “the” before the word “ price ” and later referred to it in the section as * ‘ such price ’ ’. While this may be grammatically attractive and persuasive, it is obvious that statutes are not mere exercises in grammar, but rather are attempts to express policies thought *533 desirable by the Legislature. To say that the avoidance of the use of the precise dollars-and-cents figure at which liquor is being offered for sale in such advertising is not advertising the “ price ” is to take a very dim view of the ordinary consumer’s ability to deduce from such advertising the fact that a particular bottle of liquor being offered for sale “ at wholesale,” at a “ reduction of 20% ”, or at a “ saving of 20% ” is going to cost him less than it ordinarily would. Even the most jaundiced observer of the average consumer will agree that such advertisements will bring home the message that the items being advertised are cheaper than usual and that, as a matter of simple economics, it is advantageous to buy now and even to "stock up ” so as to maximize his savings.
Even apart from such a common-sense construction of the language used in subdivision 19, the advertisements in question must be deemed violative of the statute when read in light of the functionally-integrated provisions of subdivision 20. Subdivision 19 prohibits advertising the price of beer or liquor “ except in the interior of the licensed premises.” Subdivision 20 (added L. 1969, ch. 1155 [eff. Sept. 1, 1969]) then specifies the uses of the price factor in the interior of the licensed premises which are either required, permitted or prohibited: “ (a) Each retail licensee of liquor and/or wine shall designate the price of each item of liquor or wine by attaching to or otherwise displaying immediately adjacent to each such item displayed in the interior of the licensed premises where sales are made a price tag, sign or placard setting forth the bottle price at which each such item is offered for sale therein. No sign setting forth the price of liquor or wine which exceeds three by four inches in size shall be displayed anywhere in or on the licensed premises.
“ (b) No banner, sign or placard or other device advertising ‘ sale ’, 'discounts ’, ‘ reductions ’, ‘ bargains ’ or in cmy way making any similar reference to the price of any liquor or wine, shall be displayed on the exterior, or in the interior of the licensed premises; except that in instances of a closeout of a brand or damaged merchandise a sign may be displayed in the interior of the premises in accordance with such rules as the liquor authority may prescribe.” (Emphasis added.) When it is recognized that the fundamental purpose of the entire regula *534 tory scheme has been, and is, that of promoting “ temperance ” (Alcoholic Beverage Control Law, § 2), it is clear that the Legislature, in adding provisions dealing with price advertising, could only have .intended to restrict it so as to avoid promoting consumption. Indeed, the State Liquor Authority itself recognized this as the purpose for the enactment of subdivision 19 in its 1964 Annual Report when it indicated that the subdivision had been enacted to reinforce the prohibition of below-cost sales contained in section 101-bb of the act and “ to mitigate any untoward use of the price factor as inducement to immoderate purchases and consumption ” (pp. 8-9 [emphasis added]). That position finds support in the provisions of subdivision 20.
The basic question is whether it can reasonably be said that the Legislature supposed that it could further promote the basic purpose of the regulatory scheme — temperance—by allowing retail licensees to attract purchases and ultimate consumption by use of price advertising. It must be assumed that the Legislature understood that the only reason for the existence of advertising is precisely that of increasing purchases and consumption. It is thus both unnecessary and injudicious to interpret a legislative act in such a way as to impute nonrecognition or ignorance of such a basic proposition to the Legislature.
The purposes of the statute as a whole are clearly and directly served by reading subdivisions 19 and 20 together so as to prohibit advertising based on the price factor (and not merely the exact dollars-and-eents price itself) except as expressly permitted in the interior of the premises by subdivision 20. The majority, however, by giving section 101-b (subd. 3, par. [d]) such a sweeping construction has nullified the clear legislative intent manifested in subdivisions 19 and 20. Indeed, to read subdivision 19 as the majority would in the face of the restriction on the use of the price in the interior of the premises (the licensee cannot use a price sign in the interior of the premises which exceeds three by four inches and cannot use standard “ sale ” slogans except for closeouts and damaged merchandise) makes no sense at all. Such a reading requires that we conclude that the Legislature made the determination that the use of price signs larger than three by four inches in the interior of the licensed premises would have a greater tendency to promote consumption than would the use of newspaper advertisements *535 and throwaways proclaiming “ bargains ”, “ 20% reductions ” and “wholesale prices”. That conclusion should not be accepted, particularly when other parts of the functionally whole regulatory scheme clearly provide the basis upon which to reach a reasonable construction which comports with the purposes of the whole.
In keeping with the obviously sophistical interpretation advanced by the State Liquor Authority and accepted by the majority, a New York department store recently advertised in the papers of extensive circulation that the New York State law prohibited advertising the price of liquor, but went on to inform the readers that they could rely on the low, low price. The construction placed on the provisions of the statute by the State Liquor Authority has led to this contemptuous disregard for the plain language of the statute.
Accordingly, the orders of the Appellate Division should be reversed and the determinations of the State Liquor Authority reinstated.
Chief Judge Fran and Judges Breitel and Gibson concur with Judge Bergan ; Judge Burke dissents and votes to reverse in a separate opinion in which Judges Scileppi and Jasen concur.
In each case: Order affirmed.